IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Jack Braveboy, | ) | C/A No. 4:07-591-RBH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| New Millennium Building Systems, Inc, | ) | |
| f/k/a Socar, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This employment discrimination matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the defendant's motion for summary judgment. (Docket Entry 37.) The plaintiff, Jack Braveboy ("Braveboy"), filed this action asserting claims of age discrimination,[1] violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and wrongful discharge under South Carolina law.

The defendant filed a motion for summary judgment. (Docket Entry 37.) Following an extension of time, Braveboy filed a response in opposition to the defendant's motion. (Docket Entry 41.) The defendant then filed a reply to Braveboy's response. (Docket Entry 43.) The motion is now ready for a report and recommendation.

---

[1]Although Braveboy's Complaint purports to assert an age discrimination claim pursuant to Title VII of the Civil Rights Act, because Title VII's provisions do not address discrimination on the basis of age, the court will construe this claim to be pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. (See Def.'s Mem. Supp. Mot. Summ. J. at 7 n.4, Docket Entry 37-2 at 10 n.4.)

# BACKGROUND

Viewed in the light most favorable to Braveboy, the following facts are pertinent to the resolution of the defendant's motion. Braveboy is a fifty-eight year old white male who has worked since 1972 for the defendant, New Millennium Building Systems, Inc., f/k/a Socar, Inc. ("New Millennium"), a manufacturer of steel trusses and joists. During Braveboy's thirty-three years of employment with New Millennium, Braveboy's supervisor, Carey Andrews ("Andrews"), awarded Braveboy several promotions and raises. Braveboy's most recent position with New Millennium was that of short-span line supervisor.

In 2005, two events occurred. First, New Millennium installed computers on the production line, which presented Braveboy with some challenges in performing his job. Second, Braveboy began to suffer from depression. Ultimately Braveboy was admitted to the hospital in June of 2005, missing nine days of work, and was diagnosed with bipolar disorder-hypomania and major depressive disorder. Andrews attempted to visit Braveboy in the hospital but was not admitted to see him pursuant to hospital policy.

In early October of 2005, six employees under Braveboy's supervision complained to Andrews about abusive misconduct by Braveboy. The employees' complaints included assertions that Braveboy was

(a) mistreating employees by yelling and cursing at them, and generally making life miserable;
(b) putting employees down in front of other co-workers;
(c) using intimidating tactics;
(d) repeatedly threatening to terminate employees;
(e) running up and down the line yelling at employees; and
(f) assigning employees to jobs that they had no knowledge or experience performing.

(Andrews Aff. ¶ 5, Docket Entry 37-4; see also Hutchinson Aff. ¶ 2, Docket Entry 37-5.)[2] As a result, Andrews suspended Braveboy for two weeks. A few days after being informed of his suspension, Braveboy went to New Millennium to pick up his paycheck. Subsequently, some New Millennium employees again complained to Andrews, asserting that Braveboy had threatened them while at New Millennium picking up his check. They contended that Braveboy had threatened their jobs and lives. For example, Randy Hutchinson, a subordinate of Braveboy and Braveboy's first cousin, attested that he observed Braveboy do the following on that day:

> (a)  Mr. Braveboy went into the production area and pointed at me and several of my co-workers and then pointed toward the door; I understood this gesture to mean that I would be fired when he returned to work;
> (b)  Mr. Braveboy stared at several of my co-workers that reported his actions to Mr. Andrews;
> (c)  Mr. Braveboy told me and several of my co-workers that he would "work the hell out of" us when he returned to work; and
> (d)  Mr. Braveboy made a throat-slashing gesture at me.[3]

(Hutchinson Aff. at ¶ 5, Docket Entry 37-5; see also Andrews Aff. at ¶ 8, Docket Entry 37-4.) Andrews then indefinitely suspended Braveboy. In January of 2006, Andrews terminated Braveboy's employment with New Millennium. At that time, Braveboy was fifty-five years old and Andrews was fifty-three. New Millennium contends that it terminated Braveboy due to his abusive and threatening behavior to the employees under his supervision. (Andrews Aff. at ¶ 10, Docket Entry 37-4.) Braveboy was replaced by Randy Hutchinson, a white male who, at that time, was forty-two years old.

---

[2] Braveboy argues that these statements by Andrews are hearsay, which is addressed below. See infra Part C.2.

[3] Braveboy argues that Hutchinson could not reasonably have been in fear for his life, since Hutchinson is Braveboy's cousin and spoke with Braveboy at a family reunion after the threats were allegedly made.



# DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. The Reeves Court stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the

> employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Reeves, 530 U.S. at 148. The Court of Appeals for the Fourth Circuit has stated that the Reeves Court instructs more broadly regarding the factors "on which the appropriateness of a judgment as a matter of law will depend in any case and will include 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employers' case and that properly may be considered on a motion for judgment as a matter of law.'" Dennis, 290 F.3d at 649 (quoting Reeves, 530 U.S. at 148-49)).

**B.      Burden Shifting in Employment Cases**

The parties agree that the McDonnell Douglas burden-shifting framework should be applied in this matter. A plaintiff may demonstrate discrimination or retaliation through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a prima facie case of discrimination or retaliation, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). The defendant's burden "is a burden of production, not persuasion." Id. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.'" Id. (quoting Reeves, 530 U.S. at 142).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "'not its true reason[], but [was] a pretext for discrimination.'" Id. (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004)). Accordingly, the plaintiff's burden of demonstrating pretext "'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'" Id. (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Holland, 487 F.3d at 214 (quoting Burdine, 450 U.S. at 256).

"'[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated.'" Id. at 215 (quoting Reeves, 530 U.S. at 148). However, if the plaintiff creates only "a weak issue of fact as to whether the employer's reasons were untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "'the probative value of the proof that the employer's explanation is false.'" Id. (quoting Reeves, 530 U.S. at 149). To carry his "merged" burden to establish pretext and intentional discrimination, a plaintiff must prove "'*both* that the reason was false, *and* that discrimination was the real reason for the challenged conduct.'" Holland, 487 F.3d at 218 (quoting Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997))

PJG

(emphasis added) (discussing plaintiff's retaliation claim); see also Burdine, 450 U.S. at 256 (discussing merging of plaintiff's burdens).

**C.     Age Discrimination Claim**

**1.     Prima Facie Case**

The parties disagree as the required elements to establish a *prima facie* under the ADEA. To obtain relief based upon alleged age discrimination under the ADEA, a plaintiff must demonstrate that:  (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse employment action, he was performing his job at the level that met the employer's legitimate expectations; and (4) he was discharged under circumstances that raise a reasonable inference of unlawful discrimination.[4]  See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-12 (1996) (discussing the *prima facie* case under the ADEA); see also Warch v. Ohio Cas. Ins. Co., 435 F.3d 510 (4th Cir. 2006).  Only the third and fourth elements are at issue in this case.

With regard to the fourth element, Supreme Court and Fourth Circuit precedents analyzing the ADEA and Title VII show that this inference of unlawful discrimination may demonstrated in a variety of ways.  For example, the position may be filled with someone outside the protected class. O'Connor, 517 U.S. at 310-12; Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (en banc).  However, it is not necessary that the replacement be from outside the protected class, as the plaintiff may also show, in an age discrimination case, that he or she was replaced with someone substantially younger, even if within the protected class.  O'Connor, 517 U.S. at 310-12;

---

[4]The defendant asserts that the fourth element requires that the plaintiff demonstrate that his "position remained open or was filled by similarly qualified applicants outside the protected class." However, as discussed below, Supreme Court and Fourth Circuit precedent reveals that this is not the sole manner in which to satisfy the fourth prong of a *prima facie* case of age discrimination.

PJG

Brown v. McLean, 159 F.3d 898, 905 (4th Cir. 1998). Further, the Fourth Circuit has held that the hiring of an applicant within the same protected class does not negate an inference of discrimination when a significant lapse of time occurs between the failure to hire the plaintiff and the decision to hire the other person. Brown, 159 F.3d at 905. Moreover, where a plaintiff shows that "the employer's hiring of another person within the protected class is calculated to disguise its act of discrimination," an inference of discrimination may be drawn. Id.; Miles v. Dell, Inc., 429 F.3d 480, 488-89 (4th Cir. 2005). These examples are not an exhaustive list of circumstances from which a inference of discrimination may be drawn. Miles, 429 F.3d at 487.

New Millennium contends that Braveboy was not meeting its legitimate expectations at the time of his termination due to his "supervisory misconduct and threatening behavior." (Def.'s Mem. Supp. Mot. Summ. J. at 8, Docket Entry 37-2 at 8.) Braveboy, in turn, relies on a decision of the United States Court of Appeals for the First Circuit, arguing that the fact that "long term employees [] have been given attendant promotions and pay raises by their employers supports an inference that an employee's job performance was adequate to meet an employer's needs, even when the evidence did not extend all the way to the time of discharge." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 5, Docket Entry 41 at 5) (citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996)). This contention does not aid Braveboy, however, as New Millennium acknowledges that Braveboy was a "model employee" throughout most of his tenure with the company. Rather, New Millennium points out that Braveboy's termination resulted from misconduct occurring at end of his employment. The ADEA does not require an employer to retain an employee with a good work history if that employee later engages in misconduct warranting termination. The relevant time to evaluate the performance is *at the time* of the adverse action. See, e.g, Miles, 429 F.3d at 485 (Title

VII) (stating that the third factor of a *prima facie* case includes that "she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action"). Moreover, in determining satisfactory job performance, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996)). At the time of Braveboy's termination, New Millennium had determined that Braveboy had violated the company's policies based on his recent conduct with regard to the employees he supervised. Therefore, Braveboy cannot satisfy the third factor of the *prima facie* case.

### 2. Pretext

Even if Braveboy could establish all four elements of the prima facie case for age discrimination, he cannot show that New Millennium's stated reason for terminating him was false and that age discrimination was the true reason. See Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007) (Title VII). While Braveboy argues that the contents of Andrews's affidavit describing the complaints by the employees working under Braveboy's supervision constitutes inadmissible hearsay, these statements are not introduced for the truth of the matter asserted, but rather to show Andrews's state of mind and the reasonableness of his belief that Braveboy had engaged in inappropriate behavior. Accordingly, these statements in Andrews's affidavit are not hearsay. See Rule 801(c), Fed. R. Evid. (defining "hearsay"). Significantly, although Braveboy contends that a genuine issue of material fact precludes summary judgment because he denies that

these incidents occurred, whether they actually occurred is not material to this dispute, as it is the decision maker's perception and reasonable belief that matters. See Holland, 487 F.3d at 217-18 (concluding that no reasonable juror could conclude the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision maker] did not honestly believe that the threats were made" and noting that "'[i]t is the perception of the decisionmaker which is relevant.'") (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435 (4th Cir. 1998)). Accordingly, to show pretext, Braveboy must show that the decision maker could not have reasonably believed that the stated reason was legitimate. See id.

Braveboy points out that other New Millennium employees who had engaged in misconduct were treated less severely than he and were given multiple chances to amend their behavior. However, he admits that the misconduct committed by those employees was "not similar to the allegations against" him, (Pl. Dep. at 114, Docket Entry 43-3 at 7), as those employees were disciplined for absenteeism, poor job performance, and drinking alcohol. Because the conduct by those employees did not involve threats, intimidation, or abusive language to other employees, Braveboy cannot use them as valid comparators as evidence of discriminatory intent toward him. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 134 (4th Cir. 2002) (Title VII) (stating that absent evidence that similarly situated employees outside of the employee's class engaged in the same type of misconduct, a plaintiff cannot prove disparate treatment); see also Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII & ADEA) (defining "similarly situated" to include individuals who had the same supervisor, were subject to the same standards, and engaged in the same conduct without differentiating or mitigating circumstances); Bryant v. Food Lion, 100 F.

Supp. 2d 346, 371 (D.S.C. 2000) (ERISA) (stating that comparisons among employees are valid only if the employees are similarly situated).

Braveboy further attempts to show that the reason offered for his termination is unworthy of credence by arguing that no one actually complained that Braveboy threatened to hurt or kill them. This argument, however, is unavailing, as New Millennium could legitimately terminate Braveboy for far less threatening misconduct. (See Andrews Aff. ¶¶ 5, 8, Docket Entry 37-4 at 3-4 (stating that employees complained about yelling, cursing, intimidation, threats of termination of employment, and put-downs by Braveboy); Pl. Dep. Ex. 3 Employee Handbook, Docket Entry 37-3 at 26-27.) Moreover, Braveboy's attempt to cast doubt on Hutchinson's affidavit by arguing that Hutchinson could not have reasonably been in fear of him misses the point. As discussed above, the relevant question is whether Andrews reasonably believed the statements of Hutchinson and the other five employees who complained that they felt threatened.

Tellingly, Braveboy admits that he is not surprised that Andrews, faced with complaints about his management style from six different valuable employees, eventually decided to terminate him. (Pl. Dep. at 52, Docket Entry 37-3 at 20.) Additionally, the decision maker in this case, Andrews, at age fifty-three, was only two years younger than Braveboy at the time he made the decision to discharge Braveboy. Case law is clear that where the alleged discriminator and the plaintiff are members of the same protected class, there is an inference that no unlawful discrimination occurred. See, e.g., Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1471 (11th Cir.1991) (stating that "it is difficult for a plaintiff to establish discrimination when allegedly discriminatory decision-makers are within the same protected class as the plaintiff"); see also Coggins v. Gov't of District of Columbia, 1999 WL 94655, at *4 (4th Cir. 1999) (Table) ("The fact

that both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."). Further, Andrews had recommended Braveboy for his prior promotions and raises, and had encouraged him to accept a supervisory position. (Pl. Dep. at 49, Docket Entry 37-3 at 17); see also Parrish v. United Steelworkers of America, 116 F.3d 174 (4th Cir. 1997) (Table) (finding that the plaintiff had failed to present sufficient evidence of pretext and discriminatory intent where the alleged discriminator was instrumental in the two promotions that the plaintiff had previously received and was aware that the plaintiff was over 40 and black). Viewing the record as a whole, no reasonable jury could find that the stated reason was false and that age discrimination was the true reason motivating Andrews's decision to terminate Braveboy's employment.

**D.   ADA Claim**

The ADA prohibits employment discrimination against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a).[5] To establish a *prima facie* case of employment discrimination based upon a disability, a plaintiff must show: (1) that he was a qualified individual with a disability; (2) that he was discharged; (3) that he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) that the circumstances of his discharge raise a reasonable inference of unlawful discrimination. See Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004). New Millennium challenges Braveboy's ability to show all but the second element.

---

[5]This action predates the 2008 amendments to the ADA; thus, the earlier version of the statute applies.

As to the first prong, despite his diagnosis of bipolar disorder and major depressive disorder, Braveboy cannot show that he meets the statutory definition of "qualified individual."[6] 42 U.S.C. § 12111(8). Under the ADA, "qualified individual" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment condition that such individual holds or desires." 42 U.S.C. § 12111(8). A disabled employee is not "qualified" for a position if he commits misconduct which would disqualify an individual who did not fall under the protection of the ADA. See Palmer v. Circuit Court of Cook County, 117 F.3d 351, 352 (7th Cir. 1997) (Posner, J.) ("The ADA does not require an employer to retain a potentially violent employee. . . . The Act protects only "qualified" employees, that is, employees qualified to do the job for which they were hired; and threatening other employees disqualifies one."); see also Martinson v. Kinney Shoe Corp., 104 F.3d 683, 686 n.3 (4th Cir. 1997) (noting that "misconduct—even misconduct related to a disability—is not itself a disability, and an employer is free to fire an employee on that basis."). For this same reason, as well as for the reasons discussed above at part C.1., Braveboy also cannot show that he was meeting his employer's legitimate expectations at the time of his discharge.

---

[6]New Millennium also contends that Braveboy does not meet the statutory definition of "disability." 42 U.S.C. § 12102. However, the court finds that Braveboy has presented sufficient evidence from which a reasonable jury could find that he suffers from a "mental impairment that substantially limits one or more major life activities . . . ." Id.; Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1081 (10th Cir. 1997) ("Applying the statutory definition and the EEOC's guidance, every appellate court which has considered the question has held or assumed that "bipolar disorder" is a mental disability covered under the ADA, at least if it is sufficiently severe[.]") (citing Birchem v. Knight of Columbus, 116 F.3d 310, 312, 313-14 (8th Cir. 1997); Bultemeyer v. Ft. Wayne Cmty. Sch., 100 F.3d 1281, 1284 (7th Cir. 1996); Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 160-61 (5th Cir. 1996)); (Pl. Dep. at 86, 90, 92, 94-96, 101, 126, Docket Entry 41-2 at 23-26, 33) (describing plaintiff's inability to sleep, eat, and concentrate as well as the long-term nature of his condition and his hospitalizations).

PJG

Even if Braveboy could establish a *prima facie* case of discrimination on the basis of disability, he again cannot show that New Millennium's stated reason for terminating his employment was false and that discrimination was the true reason. Holland, 487 F.3d at 214; see also supra Part C.2. The only evidence Braveboy has introduced that New Millennium was aware of his disability was that Andrews knew Braveboy had been hospitalized for several days in June of 2005 and attempted to visit him there, and that Andrews knew he had been "feeling bad" and "losing weight." (Pl. Dep. at 111, Docket Entry 41-2 at 29.) However, the ADA does not require an employer to be clairvoyant. Hedberg v. Ind. Bell Tel. Co., Inc., 47 F.3d 928, 934 (7th Cir. 1995). This is particularly so when depression or an anxiety disorder is involved. Rogers v. CH2M Hill, Inc., 18 F. Supp. 2d 1328, 1337 (M.D. Ala. 1998). "Asking the employer to guess at such is asking too much of the employer, and of the ADA." Id. Here, the record is devoid of any evidence that New Millennium knew that Braveboy suffered from disabling bipolar disorder and major depression. New Millennium cannot have discriminated against Braveboy on the basis of a disability if it knew nothing about it. See 42 U.S.C. § 12112(a) (stating that an employer is prohibited from discriminating against "a qualified individual with a disability because of the disability of such individual"); cf. Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1186 (11th Cir. 2005) (stating that "a decision-maker who lacks actual knowledge of an employee's disability cannot fire the employee 'because of' that disability"); Hedberg v. Ind. Bell Tel. Co., Inc., 47 F.3d 928, 932 (7th Cir. 1995) ("At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the disability.").

*PJG*

### E. Wrongful Discharge Claim

Braveboy does not address his wrongful discharge claim in his memorandum in opposition to New Millennium's motion for summary judgment. To the extent that Braveboy contends that his termination violated the public policy of South Carolina, this claim must fail for the reasons stated in New Millennium's memorandum. (Def.'s Mem. Supp. Mot. Summ. J. at 21-23, Docket Entry 37-2 at 21-23.)

### RECOMMENDATION

Braveboy cannot establish a prima facie case of age or disability discrimination because he cannot show that he was meeting his employer's legitimate expectations at the time of his termination. See O'Connor, 517 U.S. at 310-12; Rohan, 375 F.3d at 272 n.9. Further, even if he could establish a prima facie case, he has not introduced sufficient evidence from which a reasonable jury could find that the reason offered for his discharge by New Millennium—Braveboy's treatment of the employees under his supervision—was pretextual and that age or disability discrimination was the real reason. Holland, 487 F.3d at 214; Equal Employment Opportunity Comm'n v. Sears, 243 F.3d 846, 854 (4th Cir. 2001) (holding that once a plaintiff sufficiently demonstrates pretext, if "'no rational factfinder could conclude that the [employer's job] action was discriminatory,' then the case should not proceed beyond summary judgment") (alternation in original) (quoting Reeves, 530 U.S. at 148). Accordingly, the court recommends that New Millennium's motion for summary judgment (Docket Entry 37) be granted.

August 3, 2009  
Columbia, South Carolina

Paige J. Gossett  
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).